FILED
14 MAR -7 PM 4: 16
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: CML DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

In re TRUMAN W. THOMPSON,

Debtor,

TRUMAN W. THOMPSON,

Appellant,

vs.

C&W DIVING SERVICES, INC.,

Appellee.

CASE NO. 13-CV-0994 BEN (NLS)

Bankruptcy No. 11-20451-LT7
Adv. Proceeding No. 12-90098-LT

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER**

Before the Court is an appeal from an order entered by the United States Bankruptcy Court for the Southern District of California, which: (1) issued terminating sanctions against the Appellant; (2) struck the Appellant's answer; and (3) directed the Clerk to enter a default against Appellant. The appeal has been fully briefed, and the Court finds the appeal suitable for disposition without oral argument. For the reasons set forth below, the Court **AFFIRMS** the order.

///

///

## BACKGROUND

On December 22, 2011, Appellant Truman W. Thompson filed a voluntary petition for bankruptcy protection under Chapter 7. On March 14, 2012, Appellee C&W Diving Services, Inc. ("C&W") filed an adversary complaint to determine that an alleged $340,000 debt owed to C&W was deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

Counsel for the parties met for an early conference of counsel on May 9, 2012, as required by Local Bankruptcy Rule 7016-2. At the conference, counsel were required to exchange all documents and make all disclosures required by Federal Rule of Bankruptcy Procedure 7026. Attorney John W. Sunnen, counsel for Thompson, was unable to produce all required documents and make all necessary disclosures because Thompson had not yet provided him with the necessary documents.

During discovery, C&W subpoenaed documents from Thompson. Thompson failed to timely respond, and C&W was forced to continue Thompson's deposition, originally held on October 4, 2012, to December 11, 2012. In addition, Thompson's conduct made it necessary for the bankruptcy court to extend the discovery cut-off several times.

On October 17, 2012, Attorney Sunnen filed a motion to withdraw as counsel of record. A hearing on the motion was held on November 15, 2012. The motion was brought largely because Thompson refused to cooperate with his own counsel and C&W's counsel, as well as refused to respond to document requests. Thompson was present at the hearing. Although he was provided an opportunity to address the bankruptcy court, Thompson did not dispute his failure to cooperate and produce documents, and advised the bankruptcy court that he did not oppose the motion. The bankruptcy court granted the motion. As part of the order granting the motion to withdraw, the bankruptcy court directed Attorney Sunnen to mail a letter to Thompson setting forth all pending court dates. Thompson does not dispute receiving this letter.

Immediately after the November 15 hearing, the bankruptcy court conducted a

pre-trial status conference. Thompson was present and participated. The bankruptcy court discussed the delays caused by Thompson's failure to comply with his discovery obligations and advised Thompson of his obligation to make himself available for his deposition. The bankruptcy court also informed Thompson that unless and until he retained replacement counsel, he would be required to personally attend all future court proceedings and to comply with court orders and rules. The bankruptcy court issued an Amended Scheduling Order, entered on the docket on November 19, 2012. The Amended Scheduling Order set a further pre-trial status conference for December 20, 2012 and provided: "In the event the parties fail to abide by the above requirements and deadlines, the Court, in its discretion, may issue an Order to Show Cause regarding dismissal or other appropriate sanction."

Immediately following the November 15 status conference, Thompson and C&W's counsel agreed that Thompson would appear for a deposition on December 11, 2012. C&W's counsel sent a letter confirming this to Thompson. Four days before the scheduled deposition, C&W's counsel sent a reminder letter to Thompson. That letter also contained a reminder about the December 20 pre-trial status conference. The day before the deposition was scheduled to take place, Thompson called C&W's counsel and left a telephone message canceling the deposition.

The pre-trial status conference was held on December 20, 2012. The bankruptcy court set a trial date of March 25, 2013 and dates for pre-trial compliance. The Order After Pre-Trial Status Conference, entered December 21, 2012, provided: "In the event the parties fail to abide by the above requirements and deadlines, the Court, in its discretion, may vacate the trial date and issue an Order to Show Cause regarding dismissal, striking of Defendant's answer and entry of a default judgment, or other appropriate sanction." Thompson did not attend the December 20 pre-trial status conference or comply with the pre-trial filing deadlines set forth in the Order After Pre-Trial Status Conference.

On February 15, 2013, C&W filed a Motion for Sanctions Against Defendant,

Including But Not Limited to Striking Defendant's Answer, Precluding Defendant from Participating at Trial, and for Entry of Defendant's Default. Thompson's current counsel, Attorney Ahren A. Tiller, filed an opposition on March 22, 2013. At the April 4, 2013 hearing on the motion for sanctions, Attorney Tiller offered to have Thompson testify that he did not know about the December 20 hearing. Because the bankruptcy judge recalled telling Thompson at the November 15 hearing that he was required to personally attend the December 20 hearing if he did not retain new counsel, the bankruptcy judge advised Attorney Tiller against putting Thompson on the stand in order to prevent Thompson from perjuring himself.

On April 23, 2013, the bankruptcy court issued the Order Regarding (1) Striking Defendant's Answer and (2) Directing Entry of Default. Following the standard laid out in *Connecticut General Life Insurance Company v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007), the bankruptcy court found that terminating sanctions were warranted. Specifically, the bankruptcy court found that the public's interest in expeditious resolution of litigation, the bankruptcy court's need to manage its dockets, the risk of prejudice to C&W, and the unavailability of less drastic sanctions all favored issuing terminating sanctions.

On April 24, 2013, Thompson filed a Notice of Appeal pursuant to 28 U.S.C. § 158(a) or (b). On April 24, 2013, Thompson filed an Election to Transfer this Appeal to District Court pursuant to 28 U.S.C. § 158(c)(1). Both parties filed appellate briefs, and the Court considers this appeal to be fully briefed and ready for determination.

**DISCUSSION**

This Court has jurisdiction to review Thompson's appeal pursuant to 28 U.S.C. § 158(a). The issue on appeal is whether the bankruptcy court erred when it ordered the striking of Thompson's answer and directed the clerk to enter a default against Thompson. The imposition of terminating sanctions pursuant to Federal Rules of Bankruptcy Procedure 7016 and 7037 is reviewed for an abuse of discretion, and the sanctioned conduct must be due to the "willfulness, fault, or bad faith" of the

sanctioned party. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotation marks omitted). Factual findings made pursuant to the lower court's exercise of discretion "may not be set aside unless they are clearly erroneous." *Id.* "In particular, the [lower] court's credibility determinations are entitled to special deference." *Id.*

C&W brought the motion for terminating sanctions under Federal Rules of Bankruptcy Procedure 7016 and 7037. Federal Rule of Civil Procedure 16(f)(1), incorporated by Rule 7016, provides:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
> (A) fails to appear at a scheduling or other pretrial conference;
> (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
> (C) fails to obey a scheduling or other pretrial order.

Federal Rule of Civil Procedure 37(b)(2)(A)(iii) and (vi), incorporated by Rule 7037, authorize "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party."

To determine whether a terminating sanction under Rule 37(b)(2) is just, a court considers: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096 (internal quotation marks omitted). In regards to the last factor, courts consider: (i) "whether the court explicitly discussed alternative sanctions;" (ii) "whether it tried them;" and (iii) "whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

First, Thompson argues that the public's interest in expeditious resolution of litigation did not support issuing terminating sanctions. According to Thompson, his conduct delayed trial for only one month and the public had a greater interest in

obtaining a decision on the merits. Thompson, however, only guesses that his conduct delayed trial for one month. Thompson had a history of refusing to cooperate with his own counsel as well as counsel for C&W, which makes it unlikely that trial would have been conducted by late April or early May, as Thompson hypothesizes. In addition, the bankruptcy court recognized that "[p]ublic policy favors a disposition on the merits," but correctly found that public policy favoring judicial efficiency and economy, productive use of hearing dates, and punishing those who break the rules all outweigh the interest in disposition on the merits and support issuing terminating sanctions. (Docket No. 7-1, at 95.)

Second, Thompson argues that his failure to abide by the bankruptcy court's scheduling order and attend hearings was a result of his status as a pro se litigant, and the bankruptcy court should have treated him more leniently as such. Thompson's pro se status, however, does not excuse his actions. Thompson was reminded several times to attend the December 20 hearing—by Judge Taylor at the December 15 hearing, by counsel for C&W through a letter sent ten days before the hearing, and by Attorney Sunnen through a letter setting out all dates set in the action. The instruction to attend a hearing is not so complex as to be incomprehensible to a pro se litigant. Moreover, "being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders" or "to choose which of the court's rules and orders it will follow, and which it will willfully disregard." *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996).

Third, Thompson argues that the fact that C&W produced the required documents and made the necessary disclosures during discovery while Thompson did not, did not prejudice C&W. According to Thompson, that he was able to review C&W's pretrial documents did not prejudice C&W because the pretrial documents contained information that was rightfully made available during discovery. The only harm C&W suffered, Thompson argues, was the incurment of attorneys' fees in drafting a motion for sanctions and attending the hearing on the motion for

sanctions—a harm that could have been cured by the imposition of monetary sanctions. On the contrary, the prejudice to C&W stems from the fact that Thompson would have had significantly more time than C&W to consider the opposing side's arguments as laid out in the pretrial documents, as the bankruptcy court recognized. (Docket No. 7-1, at 96.) In addition, C&W was also prejudiced in that it expended resources and energy in preparing for trial, lost that momentum, and then would have had to expend more resources and energy in preparing for trial a second time if trial was delayed, as the bankruptcy court explained. (*Id.*) As the bankruptcy court correctly concluded, such injury cannot adequately be compensated by a monetary sanction.

Fourth, Thompson argues that the bankruptcy court should not have issued terminating sanctions because his actions did not interfere with the bankruptcy court's ability to reach a rightful decision in the action. As recognized by the bankruptcy court, however, it was questionable whether a decision on the merits would have ever been reached in this case. (*Id.*) Thompson had a history of not cooperating with his attorney. Attorney Sunnen's motion to withdraw was filed largely because Thompson refused to cooperate with his own counsel and C&W's counsel as well as refused to respond to document requests. The bankruptcy court correctly found that the fourth factor, the public policy favoring disposition of cases on their merits, was neutral.

Fifth, Thompson argues that the bankruptcy court never warned him that he could face terminating sanctions. On the contrary, both the Amended Scheduling Order and Order After Pre-Trial Status Conference warned Thompson that failure to comply with the requirements and deadlines laid out in those orders could result in terminating sanctions. Thompson argues that he never received the Order After Pre-Trial Status Conference because the order was electronically sent to Attorney Sunnen after he withdrew as Thompson's counsel. Even assuming that Thompson never received a copy of the Order After Pre-Trial Status Conference, he does not dispute that he received a copy of the Amended Scheduling Order.

Sixth, Thompson argues that his actions were not willful or committed in bad

faith. According to Thompson, his failure to attend the December 11 deposition and December 20 hearing as well as comply with the deadlines set by the bankruptcy court were a result of his pro se status. Thompson cites *Downs* and *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), for the proposition that a court has a duty to treat pro se litigants more leniently than represented litigants. In both *Downs* and *Ehrenhaus*, however, the courts of appeals affirmed the issuance of terminating sanctions where a pro se litigant disregarded the district court's orders. *See Downs*, 78 F.3d at 1257; *Ehrenhaus*, 965 F.2d at 921-22. Here, Thompson demonstrated a similar disregard for the bankruptcy court's orders. The bankruptcy court's finding that Thompson's actions were willful and in bad faith was justified.

Accordingly, the bankruptcy court did not abuse its discretion when it ordered terminating sanctions.

## CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the bankruptcy court's Order Regarding (1) Striking Defendant's Answer and (2) Directing Entry of Default.

**IT IS SO ORDERED.**

DATED: 3/7/14

HON. ROGER T. BENITEZ
United States District Judge